UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARY ANN FROUST

          Petitioner,

                                                                             Case No. 15-cv-1098-bhl

   v.

JENNIFER MCDERMOTT,

          Defendant.

---

## DECISION AND ORDER DENYING PETITION FOR
## WRIT OF HABEAS CORPUS

---

      Petitioner Mary Ann Froust seeks a writ of habeas corpus under 28 U.S.C. §2254. (ECF No. 1.) Froust is currently in state custody, serving a twelve-year prison sentence after a jury convicted her of first-degree reckless injury. She alleges the state trial court erred when it directed a verdict in favor of the state during the insanity portion of her bifurcated criminal trial. Having reviewed the record, the Court must deny the petition.

## BACKGROUND

      On February 9, 2012, Froust attended a small party at an apartment in Fond du Lac, Wisconsin. Peter Doud, an acquaintance of Froust, arrived at the party intoxicated, walked up to Froust, "got in her face," and "grabbed her chest." (ECF No. 11-10 at 112-13.) Froust became angry, and Doud was kicked out of the apartment. (*Id.* at 132.) A short time later, Doud returned, and sat down on a couch with a beer. (*Id.* at 113.) At some point thereafter, Froust found a knife in the apartment and, according to trial testimony, walked up to Doud, yelled "you're dead," and repeatedly stabbed him in his neck and back. (*Id.* at 114-15.)

      The state charged Froust with attempted first-degree intentional homicide. Froust entered pleas of not guilty and not guilty by reason of mental disease or defect. Under Wisconsin state law, her pleas triggered a bifurcated criminal trial on the issues of guilt and insanity. *See* Wis. Stat. §971.165.

Froust's criminal trial began on May 21, 2012. (ECF No. 11-10 at 5.) After the close of the evidence, the government moved to amend the criminal information to add a charge of first-degree reckless injury. The court granted the motion. (ECF No. 11-11 at 52.) After deliberations, the jury convicted Froust of that lesser charge and the Court then proceeded to the insanity phase of the trial. (*Id.* at 137.) Under Wisconsin law, a defense based on a plea of not guilty by reason of mental disease or defect is an affirmative defense and the defendant has the burden of establishing mental disease or defect "to a reasonable certainty by the greater weight of the credible evidence." Wis. Stat. §971.15(3). The defense requires the jury to find both that the defendant had a mental disease or defect *and* that the defendant lacked substantial capacity to appreciate the wrongfulness of the conduct or to conform that conduct to the requirements of law. Wis. Stat. §971.15(1).

During the second phase of the trial, Froust and two defense experts testified. (ECF No. 11-12.) Froust recounted her childhood in foster care and described years of physical, emotional, and sexual abuse that she endured from family members, strangers, and boyfriends. (ECF No. 11-12 at 25-46.) When describing the night of the stabbing, she explained that Doud had grabbed her and touched her "sexually." (*Id.* at 41-42.) She recalled hitting Doud but did not remember grabbing the knife. (*Id.* at 42.) She testified that during the act, she was thinking about a previous boyfriend who had raped her on multiple occasions. (*Id.*) At some point, she understood what she was doing, saw the blood on Doud, and realized something bad had happened. (*Id.* at 45.) She testified that, at that point, her first reaction was to help him. (*Id.* at 46.) During cross-examination, Froust admitted to being intoxicated at the time of the stabbing. (*Id.* at 56.)

Marilyn Hein, a sexual abuse counselor, testified generally about the long-term effects experienced by victims of child sexual abuse. (*Id.* at 79-91.) She testified that sexual abuse victims can suffer from depression, post-traumatic stress syndrome, and substance abuse. (*Id.* at 81.) Hein then explained that some victims of sexual abuse can suffer from "dissociation," which is when the victim "tries to disconnect from the feelings, the pain, the shame, the guilt, the fear" of the abuse. (*Id.* at 86.) She stated that it is common for dissociation to occur when a victim is being retraumatized. (*Id.*)

The defense's final witness was Dr. Kent Berney, a court-appointed psychologist, who testified that Froust suffered from a mental disease or defect. (*Id.* at 101.) Specifically, Dr. Berney opined that, to a reasonable degree of scientific certainty, Froust suffered from post-traumatic

stress disorder.  (*Id.* at 105-106.)  He also testified that it was possible she was in a dissociative episode at the time of the stabbing, and a dissociative episode could explain her lack of memory of the incident.  (*Id.* at 114.)  However, he went on to testify that, because of Froust's substantial alcohol use the night in question, he could not determine whether she lacked a substantial capacity either to appreciate the wrongfulness of the conduct or to conform her conduct to the law.  (*Id.* at 117.)

The defense rested after Berney's testimony.  The state then moved for a directed verdict on the basis that the defense failed to present enough evidence to allow the jury to find the defendant not guilty by reason of mental disease or defect.  (*Id.* at 129.)  Specifically, the state conceded that Froust had a mental disease or defect, but maintained that there was not enough evidence to support a finding that Froust lacked substantial capacity either to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of law.  (*Id.*)  After taking argument on the motion and reviewing the Wisconsin Supreme Court's decision in *State v. Leach*, 370 N.W.2d 240 (Wis. 1985), the trial court concluded that no reasonable jury could find that Froust had met her burden, granted the state's motion, and directed a verdict in favor of the prosecution.  (ECF No. 11-12 at 141.)

Froust appealed her conviction to the Wisconsin Court of Appeals.  The Court of Appeals affirmed, holding that the trial court "was not clearly wrong to direct a verdict in favor of the State."  *State v. Froust*, 843 N.W.2d 711 (per curiam) (unpublished table decision).  In support of its holding, the state appellate court concluded that Froust had not provided "sufficient evidence for a jury to determine, without speculating, forming conjectures, or theorizing, that at the time of her criminal conduct she lacked substantial capacity to appreciate the wrongfulness of her conduct or to conform her conduct to the law."  *Id.*  On September 25, 2014, the Wisconsin Supreme Court denied Froust's petition for review.

Froust filed a federal habeas petition on August 27, 2015.  The Court screened the case and found that the two claims alleged in the petition amounted to the same claim – that the trial court erred by directing a verdict for the state because Froust had provided enough evidence for a jury to decide the issue of responsibility.  After determining that Froust appeared to have exhausted her state remedies and that the petition did not reveal any procedural defaults, the Court allowed petitioner's habeas action to proceed.  The respondent has since answered and both parties have filed briefs on the merits.

# LEGAL STANDARD

A person in state custody may petition a federal court for a writ of habeas corpus under 28 U.S.C. §2254. Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), does not allow defendants to use "federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). A federal court may grant habeas relief only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315 (2015). "Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law." *Wilson v. Corcoran*, 562 U.S. 1 (2010) (per curiam).

A state court decision is "contrary to … clearly established federal law" if the state court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established [federal] law must be objectively unreasonable." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

## ANALYSIS

Froust challenges the trial court's decision to direct a verdict in favor of the state during the insanity portion of her trial. In her petition, Froust identifies two grounds for relief. First, she argues that the state trial court's directed-verdict decision was "directly contrary to the law of the *Leach* case." (ECF No. 1.) Second, she insists that "the evidence offered by [Froust] met the standard to disallow a direct verdict." (*Id.*)

Froust's dual arguments are essentially two ways of making the same point. In both of her asserted grounds, Froust questions whether the trial court correctly granted the government's motion for a directed verdict during the mental responsibility phase of her trial. At screening, the Court allowed her petition to proceed after interpreting the petition as requesting relief because the trial court had violated her Sixth Amendment right to a jury trial in a serious criminal case. Now, after being allowed the chance to further develop the record, Froust does not assert a Sixth Amendment violation, but instead challenges her conviction on what are fundamentally state law grounds.

In contesting the trial court's decision to grant the prosecution's motion for a directed verdict during the second phase of her bifurcated trial, Froust argues that she presented enough evidence to allow a jury to conclude that she was not guilty by reason of mental disease or defect. She cites to the Wisconsin Statutes and Wisconsin state court decisions that controlled her bifurcated trial. She further argues that the trial court misapplied *Leach* to her case and that, because she provided some evidence, the "trial court was clearly wrong to direct verdict in favor of the state." (ECF No. 16.) These are all questions of state law. Accordingly, even if this Court agreed with Froust that the trial court incorrectly weighed the evidence when deciding to grant the state's motion for a directed verdict, the Court could not grant habeas relief. It is not this Court's role to review whether the state courts have incorrectly applied state law during a state trial. The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

Nowhere in her petition and brief does Froust identify any Constitutional or Federal law violations. This is fundamentally fatal to her request for habeas relief. But, even if she had alleged a violation of the Sixth Amendment, or some other federal law, her claim would still not have merit. There is no clearly established federal law, as determined by the Supreme Court of the

United States, that supports her position. Indeed, the Courts that have considered the Constitutional implications of a directed verdict during the mental responsibility phase of a criminal trial have ruled that such directed verdicts are constitutional.

In *State v. Leach*, 370 N.W.2d 240 (Wis. 1985), the case on which Froust pins most of her habeas arguments, the Wisconsin Supreme Court itself held that a defendant does not have a Constitutional right to have a jury decide whether the defendant was mentally responsible for his or her crimes. In *Leach*, the defendant was accused of multiple counts of armed robbery and pleaded not guilty and not guilty by reason of mental disease or defect. *Id*. at 243. After the jury found him guilty during the first phase of his bifurcated trial, the court directed a verdict against the defendant on the issue of mental disease or defect. *Id.* at 244. The Wisconsin Supreme Court affirmed the trial judge's directed verdict and explained that, since it is an affirmative defense and does not involve the elements of a crime, a defendant does not have a Constitutional right to have a jury decide the issue of mental disease or defect. *Id.* at 248.

After Leach's conviction was affirmed by the state courts, Leach unsuccessfully sought habeas relief from this court. *Leach v. Kolb*, 911 F.2d 1249 (7th Cir. 1990). After losing in the district court, Leach appealed to the 7th Circuit. *Id*. at 1250. In a pre-AEDPA decision, rendered at a time when federal courts had greater flexibility to review state court decisions, the Seventh Circuit affirmed the district court's denial of the petition, confirming that "Wisconsin courts are not definitely prohibited by the sixth and fourteenth amendments from directing verdicts against criminal defendants on the issue of insanity." *Id.* at 1256. This Seventh Circuit ruling remains binding on this Court. Accordingly, even if Froust had claimed that the trial court violated her Constitutional rights, that claim would fail. Because Froust has not stated a cognizable habeas claim, the Court must deny her petition.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing §2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."

*Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Because no reasonable jurist could debate whether Froust has stated a ground for habeas relief under 28 U.S.C. §2254, the Court declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that, for the reasons state above, the petition is **DENIED,** and the case is **DISMISSED**.

Dated at Milwaukee, Wisconsin on April 16, 2021.

s/ Brett H. Ludwig
BRETT H. LUDWIG
United States District Judge
